UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT L. ARNOLD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:08CV1223 CDP |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Robert Arnold's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Claimant Arnold brings this action asserting that he is disabled because he suffers severe back pain and depression. The Administrative Law Judge concluded that Arnold is not disabled. Arnold appeals the decision denying him disability benefits. Because the ALJ's assessment of Arnold's residual functional capacity is not supported by substantial evidence, I will reverse the ALJ's decision and remand to the Commissioner for further consideration.

## Procedural History

On July 13, 2005, Robert Arnold filed the current application for a Period of Disability and Disability Insurance Benefits. The Social Security Administration denied Arnold's application at the initial level, and a timely hearing request was filed. Arnold appeared and testified at a hearing held on October 2, 2006. The ALJ issued an opinion on December 22, 2006 upholding the denial of benefits. On June 20, 2008, the Appeals Council of the Social Security Administration denied Arnold's request for review. The ALJ's determination thus stands as the Commissioner's final determination. Arnold filed this appeal on August 21, 2008.

## Testimony Before the ALJ

Arnold testified that he had worked as an over-the-road truck driver from April 2000 until November 2004. At the time of the hearing, Arnold testified that he suffered from piriformis, discitis, sciatica, and extsordigitorislongus. According to his testimony, these conditions cause Arnold to suffer pain from his spine over to the outside of his right gluteus and down the right leg, as well as a burning coming from his toes up to his knees. Arnold frequently needs to change position to accommodate his pain. Arnold further testified that he takes pain medications Vicodin, Neurontin, and Elavil. On a scale of one to ten, Arnold claimed that with his medication his pain is a three.

Arnold's daily activities include watching televison, using his laptop computer, feeding his pets, cleaning dishes, and vacuuming. Arnold testified that he can stay seated while watching television or using his computer for half an hour to an hour, and needs to change position or rest on average every fifteen minutes when standing. Arnold said that he eats out at restaurants approximately once a week, and he and his wife occasionally go shopping together and walk their dogs a distance of one-tenth of a mile. Arnold further testified that he does not usually lift more than five or ten pounds, and on rare occasion he lifts twenty-five pounds.

Arnold also indicated in his testimony that he suffers from depression. Arnold stated that he had been receiving psychiatric treatment for approximately two or three months before the hearing, and he was currently taking the psychotropic medications Lamictal and Zoloft. Arnold testified that he was not seeing anyone for counseling or therapy.

## Medical Records

In August 2004, Arnold's primary care physician, James Turner M.D., examined Arnold after he injured his back at work, diagnosing him with muscle strain. A September 2004 magnetic resource imaging scan of Arnold's lumbar spine showed broad-based disc bulging and osteophytic ridging that caused

stenosis at L4-5, and prominent disc protrusion and impression of the right nerve root at L5-S1. Disc protrusions were also found at L1-L2 and T12-L1.

Arnold was referred to Kevin Rutz, M.D., who performed microdiskectomies at L4-5 and L5-S1 in December 2004. Following this initial surgery, Arnold experienced some relief from his pain, but still experienced some mild thigh plain and lower back pain. He visited emergency rooms twice in early January 2005 because of this pain and was prescribed medication that temporarily improved the pain. In late January, Dr. Turner referred Arnold to physical therapy after Arnold told him that his pain had improved, but that he was having muscle spasms. Also in late January, Arnold complained to Dr. Rutz of limitations from back pain, but Dr. Rutz refused to prescribe any narcotics because he believed Arnold was inconsistent in contacting him for pain control. By February 2005, Dr. Rutz noted slow improvement in Arnold and recommended work hardening.

Arnold participated in sixteen physical therapy sessions in early 2005. Although the therapy decreased Arnold's intolerable pain, he still had sharp pains, particularly with forward flexion, and difficulty performing most activities of daily living. In late February, however, Arnold's pain worsened dramatically, and he was hospitalized. An x-ray of Arnold's lumbar spine revealed hypertrophic changes at L4-5 and L5-S1 and degenerative disc disease from T-12 to L2 and

from L4 to S1; an MRI demonstrated diffuse bone edema in L4 and L5, indicating a possible infection.  Given these abnormalities, a disc space aspiration was performed at L4-L5 in early March 2005, and positive cultures for an infection were found.  Arnold received antibiotics for his infection, but additional x-rays and an MRI showed suspected thinning of the end plates at L4 and L5.  Accordingly, in late March, Dr. Rutz peformed a debridement of L4-L5, a diskectomy, and a fusion with hardware implantation.  Arnold was also diagnosed with degenerative disc disease and discitis.  After the surgery, Arnold became mobile and was soon discharged.

In June 2005, Arnold began physical therapy.  After about one month of therapy, Arnold reported improved mobility and tolerance of daily activities, but still had back pain and difficulty sustaining activities for longer than two or three hours.  Around the same time, Dr. Rutz began to taper Arnold's pain medications and allowed him to return to limited work duty with no lifting over twenty pounds, no driving more than two hours daily, and the need to change positions as needed.

In September 2005, Arnold underwent a lumbar myelogram that showed a solid fusion at L4-L5 and minimum extradural defects from L1 to L4.  Additionally, a CT revealed no significant central canal or foraminal stenosis at

T12-L1 or from L1 to L4. Dr. Rutz referred Arnold to Sandra Tate, M.D., in response to a request from a workers' compensation adjuster.

Dr. Tate examined Arnold in October 2005 and again in November 2005, prescribing physical therapy and pain medication. After concluding that Arnold had a twenty-percent permanent partial disability at the lumbar spine, Dr. Tate discharged him from her care and determined that Arnold's permanent work restrictions included no lifting of more than thirty pounds, no excessive bending at the waist, and the ability to change positions hourly as needed.

Arnold returned to his primary care physician, Dr. Turner, in December 2005 to complain of stress and anxiety. Dr. Turner prescribed Zoloft. Dr. Turner also concluded in January 2006 that there was no clinical evidence demonstrating that Arnold was disabled.

In January 2006, Arnold consulted Steve Nester, M.D., who examined him and determined that he had a seventy-five-percent permanent partial disability. He also diagnosed Arnold as bi-polar. In February 2006, Arnold began treatment with Eugene Holemon, M.D., a psychiatrist, who noted Arnold suffered from instability, decreased interests, limited activities, decreased sleep, fatigue, and hopelessness. In October 2006, Dr. Holemon completed a medical source statement that identified multiple deficiencies in Arnold's abilities, including the

ability to relate with co-workers, to maintain attention and concentration, and to function independently.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, *id.*, or because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See,*

*e.g.*, *Battles v. Sullivan*, 992 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F2.d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id.* at 1322.

## The ALJ's Findings

The ALJ found that Arnold was not disabled considering his age, education, work experience, and residual functional capacity. She issued the following specific findings:

1. The claimant was insured for a Period of Disability and Disability Insurance Benefits on August 19, 2004, his alleged onset date, and he remained insured throughout the period of this decision.

2. The claimant engaged in substantial gainful activity from August 19 through October 331, 2004. 20 C.F.R. § 404.1520(b).

3. The claimant has been more than minimally limited by discogenic and degenerative disorders of the back since November 1, 2004. 20 C.F.R. § 404.1520(c).

4. The claimant's condition has not met or medically equaled a listing in 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 404.1520(d).

5. The claimant's allegations are not fully credible. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984); 20 C.F.R. § 404.1529.

6. Within twelve months of November 1, 2004, the claimant had – and continued to have – the residual functional capacity to lift, carry, push or pull twenty pounds occasionally and ten pounds frequently, sit six hours in an eight-hour day, stand or walk a total of six hours in an eight-hour day, and occasionally bend. 20 C.F.R. § 404.1567.

7. The claimant has been unable to perform his past relevant work since November 1, 2004. 20 C.F.R. § 404.1520(e).

8. The claimant is a younger individual. 20 C.F.R. § 404.1563.

9. The claimant has more than a high school education. 20 C.F.R. § 404.1564.

10. The claimant has been able to perform work existing in significant numbers in the national economy since November 1, 2004. 20 C.F.R. § 404.1520(f). This finding is based on Medical-Vocational Rules 202.21 and 202.22 of 20 C.F.R. pt. 404, subpt. P, app , Table No. 2.

11. The claimant has not been disabled in accordance with the Social Security Act. He is not entitled to a Period of Disability and Disability Insurance Benefits.

The ALJ concluded that the whole of the medical record did not support a finding of disability and that Arnold was not entirely credible. Specifically, the ALJ gave "considerable weight" to Dr. Tate's opinions because they "were based

on test results" and were "consistent with the record as a whole," including the opinions of Dr. Rutz and Dr. Turner and multiple x-rays. The ALJ gave slight weight to the opinions of Dr. Nester because they were inconsistent with the record as a whole and were not supported by Dr. Nester's own examination results for Arnold. Additionally, the ALJ determined that Arnold was not entirely credible because he had informed several of his physicians that he was improving throughout his treatment history. Finally, the ALJ found that Arnold's daily activities, including his walking, standing, and use of medications that decreased his pain, belied his claims of disability.

## Discussion

As previously mentioned, when reviewing a denial of Social Security benefits, a court must determine whether there is substantial evidence on the record as a whole to support the ALJ's decision. 42 U.S.C. § 405(g); *Estes v. Barnhart*, 722, 724 (8th Cir. 2002). In this case, Arnold raises two issues on appeal from the final determination denying disability. First, Arnold argues that the ALJ improperly evaluated his residual functional capacity (RFC). Specifically, he contends that the ALJ erred by giving considerable weight to Dr. Tate's opinions, and by discrediting Dr. Nester's opinions. Alternatively, he argues that, even if the ALJ correctly gave considerable weight to Dr. Tate's opinions, the ALJ did not properly incorporate those opinions into the her

assessment of Arnold's RFC. Finally, Arnold alleges that the RFC was wrong because it was incomplete as to his mental limitations. In his second issue, Arnold contends that the ALJ erred by refusing to call a vocational expert even though Arnold suffered from non-exertional limitations. Because I find that the ALJ committed reversible error by improperly evaluating Arnold's RFC, I will only address that argument in this memorandum.

When, as in this case, a claimant has a severe impairment that does not meet or exceed a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1, but the claimant is unable to perform his past work, the burden shifts to the Commissioner to prove that the claimant retains the RFC to perform other kinds of work. *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Residual functional capacity is what the claimant can still do despite his or her physical or mental limitations. 20 C.F.R. pt. 404.1545(a); *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). The ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). Although the ALJ is not limited to considering only medical evidence in making this assessment, the ALJ is "required to consider at least some supporting evidence from a professional" because a claimant's residual functional capacity is a medical question. *Lauer*, 245 F.3d at 704.

When considering professionals' opinions, the ALJ must defer to a treating physician's opinions about the nature and severity of a claimant's impairments, "including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions." *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005) (citing 20 C.F.R. pt. 404(a)(2)). If the opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record, they are given "controlling weight." *Id.* (citations omitted).

In this case, the ALJ determined that Arnold had the residual functional capacity "to lift, carry, push or pull twenty pounds occasionally and ten pounds frequently, sit six hours in an eight-hour day, stand or walk a total of six hours in an eight-hour day, and occasionally bend." This determination, however, is not supported by "some medical evidence" in the record, *see Lauer*, 245 F.3d at 706, and is contrary to the opinions of Arnold's treating physicians, which the ALJ should have given controlling weight. *See Ellis*, 329 F.3d at 995. In particular, although Arnold's treating physician, Dr. Tate, opined that he requires a sit /stand option, as needed, and the ALJ expressly noted that Dr. Tate's opinions were entitled to "considerable weight," the ALJ omitted this requirement in her determination of Arnold's RFC.

Dr. Tate determined in November 2005 that Arnold was at his maximum medical improvement but had "permanent restrictions of no lifting" greater than thirty pounds and "no excessive bending at the waist with changes in posture from sitting to standing every hour, as needed."  Similarly, Dr Rutz, who performed surgery on Arnold in December 2004 and treated him in 2005, noted that Arnold's work restrictions were "no lifting over 20 pounds and no driving over 2 hours a day and being allowed to change positions as needed."  The ALJ noted that Dr. Tate's opinions should be given "considerable weight" because they were based on test results and were consistent with the record as a whole, including with Dr. Rutz's opinion.  The ALJ was thus required to incorporate Dr. Tate's opinions into the RFC, including her opinion that Arnold be permitted a sit/stand option every sixty minutes, as needed.  *See Ellis*, 392 F.3d at 995; *see also Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989) (citations omitted) (reversing ALJ's finding of no disability when ALJ "completely ignored" treating physicians' decision concerning claimant's treatment even though ALJ relied on those physicians' reports in determining that claimant did not have a disability).

This case is distinguishable from cases in which courts have affirmed the ALJ's evaluation of a claimant's RFC even though it was contrary to the claimant's treating physician's opinions.  *See, e.g*, *Ellis*, 392 F.2d at 995; *Hogan v. Apfel*, 239 F.3d 958, 961 (8th cir. 2001).  In *Ellis*, the ALJ expressly discredited

the treating physician's opinion about the claimant's limitations, noting that there was no medical evidence to support that opinion. *Ellis*, 392 F.3d at 995. Similarly, in *Hogan*, the ALJ discredited a treating physician's opinions on the claimant's permanent limitations because the physician's own records of treatment did not contain those limitations, but instead revealed that the claimant could perform many tasks. *Hogan*, 239 F.3d at 961. In both cases, the Eight Circuit affirmed the ALJs' RFC determinations because the treating physicians' opinions were not supported by medical evidence or the record, and there was other evidence to support the ALJ's RFC determinations. *See Ellis*, 392 F.3d at 995; *Hogan*, 239 F.3d at 961.

Here, by contrast, the ALJ expressly gave Dr. Tate's opinions "considerable weight" because they were based on test results and were consistent with the record as a whole. Because she found no reason to disregard Dr. Tate's opinion that Arnold needed a sit/stand option, the ALJ erred by failing to incorporate that opinion into her assessment of Arnold's RFC. *See Ellis*, 392 F.3d at 995. Even if the ALJ had discredited Dr. Tate's opinions, however, there is no other medical evidence to support her determination that Arnold did not need a sit/stand option, unlike in *Ellis* and *Hogan*. In particular, Dr. Rutz opined that Arnold required a sit/stand option as needed. The only other treating physician who opined on Arnold's permanent restrictions, Dr. Nester, determined that Arnold could not

perform sedentary work at all, but the ALJ expressly discredited that opinion. Thus, the ALJ's determination that Arnold did not need a sit/stand option was also in error because there was no medical evidence to support it. *See Hutsel*, 259 F.3d at 712-14 (reversing an ALJ's RFC determination when no medical evidence or treating physician's opinion supported it).

I conclude that this error is reversible. This case is distinguishable from *Douglas v. Barnhart*, in which the Eighth Circuit affirmed an ALJ's failure to incorporate a treating physician's opinion that claimant required a sit/stand option into the claimant's RFC, even though the treating physician's opinion was entitled to deference. 130 Fed. App. 57, 59-60, No. 04-2530, 2005 WL 600664, at *2 (8th Cir. Mar. 16, 2005). In particular, the court held that "the ALJ's failure to include such an option in his RFC findings is not a basis for reversal" because the ALJ had already found that the claimant was capable of performing her past relevant work as a customer-service representative, and the claimant herself admitted that this job included a sit-stand option. *Id.*

The implicit conclusion in *Douglas* is that the ALJ erred by omitting from the RFC the treating physician's opinion that the claimant needed a sit/stand option. *See id.* That error was not reversible, however, because the claimant in that case could still perform her past relevant work, which allowed her a sit/stand option. *See id.* Here, however, the ALJ determined that Arnold was incapable of

performing his past relevant work of over-the-road truck driving. Unlike the claimant in *Douglas* who could return to a position that accommodated her need to sit and stand, Arnold cannot return to his past relevant work and his RFC as evaluated by the ALJ does not permit him a sit/stand option. Thus, I conclude under *Douglas* that the ALJ's failure to incorporate a sit/stand option in the RFC is reversible. *See id.* For these reasons, Arnold's claim must be remanded to the Commissioner for a new hearing.

Moreover, this error was magnified by the fact that the ALJ did not call a vocational expert, but instead relied solely on the Medical-Vocational Guidelines (the Grid) to satisfy her burden of demonstrating that Arnold can perform work as it exists in the national economy. Specifically, the ALJ found that Arnold was able to perform work existing in significant numbers in the national economy based on Medical-Vocational rules 202.21 and 202.22 of 20 C.F.R. Part 202, Subpart P, Appendix 2, Table No. 2. Numerous circuits hold, however, that when a claimant requires a sit/stand option, an ALJ may not rely solely on the Grid to satisfy his or her burden, but instead must call a vocational expert, vocational dictionary, or other appropriate guide or source. *E.g.*, *Peterson v. Chater*, 96 F.3d 1015, 1-16-17 (7th Cir. 1996); *Jesurum v. Secretary of Health & Human Services*, 48 F.3d 114, 120 (3d Cir. 1995); *Delorne v. Sullvan*, 924 F.2d 841, 850 (9th Cir. 1991). Thus, upon remand, the ALJ must go "beyond the grid" in assessing

Arnold's residual functional capacity and consult a vocational expert or other source to determine Arnold's ability to perform work as it exists in the national economy.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further development of the record.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 17th day of September, 2009.